IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

MIDDLESEX COUNTY, VIRGINIA,           )
a political subdivision of the        )
Commonwealth of Virginia,             )
P. O. Box 358                         )
Saluda, Virginia 23149                )
                                      )
                                      )
    Plaintiff,                      )
                                      )
    v.                              )
                                      )
ALBERTO R. GONZALES,                  )
Attorney General of the               )   Civil Action No.
United States of America,             )
WAN J. KIM,                           )
Assistant Attorney General,           )
Civil Rights Division, United States  )
Department of Justice, Washington, DC,)
                                      )
    Defendants.                     )
_____)

COMPLAINT FOR DECLARATORY RELIEF UNDER THE VOTING RIGHTS ACT

    Middlesex County, Virginia, alleges that:

1. This is an action brought for declaratory relief pursuant to Section 4 of the Voting Rights Act of 1965, as amended, 42 U.S.C. §1973b (hereinafter "Section 4").  This Court has jurisdiction over this action pursuant to 28 U.S.C. §1343(a)(4), 28 U.S.C. §2201, 42 U.S.C. §1973b, and 42 U.S.C. §1973l(b).

2. Plaintiff Middlesex County ("the County") is a political subdivision of the Commonwealth of Virginia and a political subdivision of a state within the meaning of Section 4(a) of the Voting Rights Act, 42 U.S.C. §1973b(a)(1).

Middlesex County is located at the eastern end of Virginia's Middle Peninsula. The County is bounded by the Rappahannock River to the north, by the Chesapeake Bay to the east, by the Piankatank River and Dragon Run Swamp to the southwest, and by Essex County to the northwest. The County has a land area of 130 square miles and 135 linear miles of shoreline.

3. Located within Middlesex County is the Town of Urbanna ("the Town"). Residents of the Town are eligible to participate in town elections and in county elections.

4. In addition to the County itself, there are elected governmental units that exist completely in Middlesex County within the meaning of 42 U.S.C. §1973b(a)(1).  One of these is the town government of Urbanna, which is governed by a Town Administrator, Mayor and 6-member town council. Another governmental unit operating completely within Middlesex County is the five-member Middlesex County School Board, which are elected in odd years to four-year staggered terms from the same districts as members of the County Board of Supervisors.

5. The Middlesex County Board of Supervisors is the governing body that formulates policies for the administration of government in Middlesex County.  It is comprised of five members elected from single-member districts to serve four-year staggered terms. The County Board of Supervisors appoints a County Administrator to serve as the County's chief administrative officer. The general day to day operations of Middlesex County are controlled by the Office of the County Administrator.

6. Middlesex County is a covered jurisdiction subject to the special provisions of the Voting Rights Act, including Section 5 of the Act. 42 U.S.C. §1973c. Under Section 5, the County is required to obtain preclearance from either this Court or from the Attorney General for any change in voting standards, practices and procedures since the Act's November 1, 1964 coverage date for Virginia.

7. Middlesex County was designated as a jurisdiction subject to the special provisions of the Voting Rights Act on the basis of the determinations made by the Attorney General that Virginia maintained a "test or device" as defined by Section 4(b) of the Act on November 1, 1964, and by the Director of the Census that fewer than 50 percent of the persons of voting age then residing in the state voted in the 1964 presidential election. 42 U.S.C. §1973b(b). The "test or device" triggering preclearance coverage under Section 5 was an article of the Virginia Constitution providing for a literacy test as a prerequisite for citizens to become electors. Va. Const. Art. II, Sec. 20 (1902). The literacy test was repealed by the Virginia Constitution of 1972.

8. According to the 2000 census, Middlesex County, Virginia has a total population of 9,932. Of this number, 1,999 persons (or 20.1%) are black and 55 (or .6%) are Hispanic. The voting age population of the County, according to the 2000 census, is 8,023. Of this number, 1,563 (19.5%) are black. The Town of Urbanna, according to the 2000 census, has a total population of 543. Of this number, 19 (3.5%) are black and 3 (.6%) are Hispanic.

9. Like other jurisdictions in the Commonwealth of Virginia, the County does not collect or maintain voter registration data by race. Current data show, however, that a significant proportion of the County's voting age population is registered to vote. As of November 2006, there were 7,348 registered voters in Middlesex County.

10. The number of registered voters in the County has steadily risen over the last few years. In 1998, for example, there were 5,989 registered voters in the County. By 2003, the number of registered voters had grown to 6,601. The number of registered voters in the County has continued to grow. As of 2006, there were 7,348. Thus, from 1998 to 2006, the total number of registered voters in the County has grown by 23% (from 5,989 in 1998 to 7,348 in 2006).

11. Voter turnout in elections within Middlesex County (*i.e.*, the percentage of those registered voters who cast ballots) varies according to the offices up for election. In the last two Presidential elections (2000 and 2004), for example, 75.8% and 76.9% of the County's registered voters turned out to vote, respectively. In the General Elections for state and county offices held in November 1999, 2001, 2003, and 2005, 62.7%, 58.6%, 51.2%, and 54.1% of the County's registered voters turned out to vote, respectively.

12. There are presently a total of seven polling locations located conveniently to voters across the County. All polling places in the County are accessible to voters with physical disabilities.

13. Black candidates have had a long history of electoral success in Middlesex County. Mr. Frank Jessie, who is Black, was first elected to the Board of Supervisors in 1979, and won re-election as recently as 1999. A Black candidate beat a White candidate in the county-wide election for Sheriff in 1997. A Black candidate is running unopposed in the county-wide election for Commissioner of Revenue this November. The current Vice Chairman of the Middlesex County Board of Supervisors is Black, having been re-elected in 2003. In 1999, 2001, and 2003, Black candidates for the County Board and School Board each won. In the 2003 School Board race, a Black candidate defeated a White candidate.

14. Since its inception in 1965, the Voting Rights Act has allowed States, which are subject to these special provisions of the Act, to exempt themselves from coverage under the Act's special remedial provisions, if they can satisfy standards established in the Voting Rights Act. This exemption process is known as "bailout".

15. In 1982, Congress made changes in the exemption standards of the Voting Rights Act. As amended in 1982, Section 4 of the Voting Rights Act provides that States, as well as political subdivisions within those States that are covered under the special provisions of the Act, are entitled to a declaratory judgment in this Court granting an exemption from the Act's special remedial provisions if, during the ten years preceding the filing of the action:

> A) no test or device has been used either for the purpose or with the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group, within the State or political subdivision seeking a declaratory judgment;

> B) no final judgment has been entered by any court determining that the political subdivision has denied or abridged the right to vote on account of race, color, or membership in a language minority group;
> C) no Federal examiners have been assigned to the political subdivision;
> D) all governmental units within the political subdivision have complied with the preclearance provisions of Section 5 of the Voting Rights Act, 42 U.S.C. §1973c; and
> E) the Attorney General has not interposed any objection to any proposed voting change within the political subdivision and no declaratory judgment has been denied with regard to such a change by this Court under Section 5.
>
> As amended in 1982, Section 4 of the Act also requires States and political subdivisions seeking an exemption from the Act's special provisions to show that, during the pendency of the declaratory judgment action seeking such exemption:
> A) Any voting procedure or method of election within the state or political subdivision exists which inhibits or dilutes equal access to the electoral process has been eliminated;
> B) Constructive efforts have been made by the political subdivision to eliminate any intimidation or harassment of persons exercising rights under the Voting Rights Act; and
> C) Expanded opportunities for convenient registration and voting exists within the State or political subdivision.

16. As described herein, plaintiff Middlesex County has fully complied with the provisions of Section 4 of the Act.

17. As a political subdivision of the Commonwealth of Virginia, plaintiff Middlesex County has been subject to certain special remedial provisions of the Voting Rights Act, including the provisions of Section 5 of the Act, 42 U.S.C. §1973c. Under Section 5 of the Act, known as the "preclearance" provisions, covered jurisdictions, including Middlesex County, are required to seek and obtain preclearance from either this Court or from the United States Attorney General of any change affecting voting, and such preclearance must be obtained prior to implementation.

18. Since 1996, Middlesex County has made 14 preclearance submissions to the United States Department of Justice pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. §1973c. Of these 14 submissions, all were made by the County. None were objected to by the Department. Two were withdrawn.

19. Within the ten years preceding the filing of this action, Middlesex County has not enforced any voting changes prior to Section 5 preclearance. Nor has the Attorney General interposed a Section 5 objection to any change affecting voting in Middlesex County within the past ten years. The County has not sought judicial preclearance of any voting changes in this Court.

20. Voter registration opportunities in the County are readily and equally available to all citizens. The voter registration office for the County is located in the Woodward Building with other county offices in Saluda, a location that is convenient for all County residents. The voter registration office is open daily from 8:30 a.m. to 4:30 p.m.

21. Voters in Middlesex County may also register by mail, and voter registration applications are available at locations convenient to voters in the County. The opportunity to become a registered voter in Middlesex County is also available under the National Voter Registration Act (the "NVRA") at the Department of Motor Vehicle ("DMV") offices and at public assistance agencies in Middlesex County. The Middlesex County General Registrar makes voter registration applications available at the County social services office, County health department, all of the libraries in the County, and all of the post offices in the County. The registrar typically does a presentation

about voting and registers high school seniors at the public high school in the spring. While in past years most voters became registered at the County's voter registration office, the implementation of the NVRA in Virginia over the last decade has changed the origin of many registration applications. Today, many of the County's new registrants register through applications submitted through the DMV and by mail, and the opportunities for persons to register to vote in Middlesex County has been made more convenient and available as a result of implementation of the NVRA.

22. Voter registration opportunities in the County are readily and equally available to all citizens.

23. Middlesex County has a three-member Electoral Board, appointed pursuant to Virginia state law. The Electoral Board is comprised of one black member and two white members. No person recommended to serve as a poll official has been rejected by the Electoral Board for at least the preceding ten years. The Electoral Board Secretary, Dr. Chauncey E. Mann, Jr., is Black, and has served on the Board since 1990.

24. In the last five county-wide elections (General, Primary and Special 2006, General and Primary 2005) Middlesex County has employed 201 poll workers, of whom 33 (or 16.4%) are black. The percentage of black poll workers (16.4%) is slightly below the percentage of Middlesex County's black voting age population (19.5%). Black interns have participated in the General Voting Registrar's summer internship program.

25. No person in Middlesex County has been denied the right to vote on account of race, color, or membership in language group for at least the preceding ten years.

26. No "test or device" as defined in the Voting Rights Act (42 U.S.C. §1973b(c)) has been used in Middlesex County as a prerequisite to either registering or voting for at least the preceding ten years.

27. No final judgment of any court of the United States has determined that denials or abridgments of the right to vote on account of race or color have occurred in Middlesex County, nor has the County entered into any consent decree, settlement or agreement resulting in any abandonment of a voting practice challenged on such grounds.  There are no pending actions against Middlesex County alleging such denials or abridgments of the right to vote.

28. No voting practices or procedures have been abandoned by the County or challenged on the grounds that such practices or procedures would have either the purpose or the effect of denying the right to vote on account of race or color.

29. Middlesex County has not employed any voting procedures or methods of election that inhibit or dilute equal access to the electoral process by minority voters in the County.  Minority voters in Middlesex County are not being denied an equal opportunity to elect candidates of their choice to the County Board of Supervisors, to the County School Board, or to the Urbanna Town Council.

30. Federal examiners have never been appointed or assigned to Middlesex County under Section 3 of the Voting Rights Act, 42 U.S.C. §1973a.

31. Because there has not been any known intimidation or harassment of persons exercising rights protected under the Voting Rights Act in Middlesex County within the last ten years, neither the County nor any of its governmental units have had any occasion to take any action eliminating such activity.

32. Pursuant to 42 U.S.C. §1973b, the County has "publicize[d] the intended commencement …of [this] action in the media serving [the County] and in the appropriate United States post offices." A Notice of Intent to Seek a Bailout was published by the County in the *Southside Sentinel*, the County's weekly newspaper on March 22, March 29, and April 5, 2007. This Notice was also posted at all post offices in the County, at the County courthouse in Saluda, at the County social services office, and at the office of the General Registrar of Voters. The aforementioned Notice also advertised that a public hearing would be held regarding the bailout on April 17, 2007, at 7:30 p.m. At the April 17, 2007 public hearing, not a single member of the public appeared, and thus no one spoke in opposition to the bailout or raised any questions about the County's proposed bailout.

33. The allegations set forth in paragraphs 17 through 32, above, if established, entitle plaintiff Middlesex County to a declaratory judgment under Section 4 of the Voting Rights Act, 42 U.S.C. §1973b, exempting the County and all governmental units within the County from the special remedial provisions of the Voting Rights Act.

WHEREFORE, plaintiff Middlesex County respectfully prays that this Court:

A.  Convene a three-judge court, pursuant to 28 U.S.C. §2284 and 42 U.S.C. §1973b, to hear the claims raised in plaintiff's complaint;

B.  Enter a declaratory judgment that plaintiff Middlesex County and all governmental units within the County are entitled to a bailout from the special remedial provisions of the Voting Rights Act; and

C.  Grant such other relief as may be necessary and proper as the needs of justice may require.

Respectfully submitted,

**For the Plaintiff MIDDLESEX COUNTY:**

/s/ J. Gerald Hebert
J. GERALD HEBERT
Attorney at Law
5019 Waple Lane
Alexandria, Va. 22304
(703) 628-4673 (Office)
DC Bar No. 447676
Email: jghebert@comcast.net

07-1485
TFH

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS**

Middlesex County, VA

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Middlesex
(EXCEPT IN U.S. PLAINTIFF CASES)

88888

**DEFENDANTS**

Alberto Gonzales, US Attorney General and Wan J Kim, Asst. Atty General

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

J. Gerald Hebert
5019 Waple Lane
Alexandria, VA 22304   (703) 628-4673

Case: 1:07-cv-01485
Assigned To : Hogan, Thomas F.
Assign. Date : 8/17/2007
Description: Three Judge Court

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

| ☐ **A.** *Antitrust* | ☐ **B.** *Personal Injury/Malpractice* | ☐ **C.** *Administrative Agency Review* | ☐ **D.** *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br><br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

☐ **E.** *General Civil (Other)* OR ☐ **F.** *Pro Se General Civil*

| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant<br>☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

(3)

| ☐ G. *Habeas Corpus/ 2255* <br><br>☐ 530 Habeas Corpus-General <br>☐ 510 Motion/Vacate Sentence | ☐ H. *Employment Discrimination* <br><br>☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) <br><br>*(If pro se, select this deck)* | ☐ I. *FOIA/PRIVACY ACT* <br><br>☐ 895 Freedom of Information Act <br>☐ 890 Other Statutory Actions (if Privacy Act) <br><br>*(If pro se, select this deck)* | ☐ J. *Student Loan* <br><br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ☐ K. *Labor/ERISA (non-employment)* <br><br>☐ 710 Fair Labor Standards Act <br>☐ 720 Labor/Mgmt. Relations <br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act <br>☐ 740 Labor Railway Act <br>☐ 790 Other Labor Litigation <br>☐ 791 Empl. Ret. Inc. Security Act | ☐ L. *Other Civil Rights (non-employment)* <br><br>☐ 441 Voting (if not Voting Rights Act) <br>☐ 443 Housing/Accommodations <br>☐ 444 Welfare <br>☐ 440 Other Civil Rights <br>☐ 445 American w/Disabilities-Employment <br>☐ 446 Americans w/Disabilities-Other | ☐ M. *Contract* <br><br>☐ 110 Insurance <br>☐ 120 Marine <br>☐ 130 Miller Act <br>☐ 140 Negotiable Instrument <br>☐ 150 Recovery of Overpayment & Enforcement of Judgment <br>☐ 153 Recovery of Overpayment of Veteran's Benefits <br>☐ 160 Stockholder's Suits <br>☐ 190 Other Contracts <br>☐ 195 Contract Product Liability <br>☐ 196 Franchise | ☑ N. *Three-Judge Court* <br><br>☑ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ Multi district Litigation   ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Section 4 of the Voting Rights Act, 42 USC 1973b (seeking a bailout)

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $ _____   Check YES only if demanded in complaint   JURY DEMAND: ☐ YES ☑ NO

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   ☐ YES ☑ NO   If yes, please complete related case form.

DATE 8/17/07   SIGNATURE OF ATTORNEY OF RECORD _Gerald Hebert_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.