IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| MIDDLESEX COUNTY, VIRGINIA,<br>a political subdivision of the<br>Commonwealth of Virginia,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL B. MUKASEY,<br>Attorney General of the<br>United States of America,<br>GRACE CHUNG BECKER,<br>Acting Assistant Attorney General,<br>Civil Rights Division, United States<br>Department of Justice, Washington, DC,<br><br>    Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   C.A. No. 07-cv-01485 (TFH)<br>)<br>)   (Three-judge court)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## JOINT MOTION FOR ENTRY OF CONSENT JUDGMENT AND DECREE

The plaintiff Middlesex County, Virginia, and the Defendants Michael B.
Mukasey and Grace Chung Becker[1], through counsel, respectfully move this three-judge
Court for entry of the attached Consent Judgment and Decree. As grounds for this
motion, the parties would show unto this Court the following:

1. This is an action in which Middlesex County, Virginia seeks a bailout from
   coverage under Section 4 of the Voting Rights Act of 1965, as amended, 42
   U.S.C. §1973b.

2. The defendants have consented to the requested bailout and the proposed Consent
   Judgment and Decree would grant a bailout to Middlesex County.

_____

[1] Defendants Mukasey and Becker are successors in office and thus automatically substituted as parties for
original defendants Gonzales and Kim. See Rule 25(d), Federal Rules of Civil Procedure.

3. The proposed Consent Judgment and Decree is nearly identical to those that have been entered by other three-judge courts in declaratory judgment actions brought under Section 4 of the Voting Rights Act, as amended, 42 U.S.C. §1973b. See, *e.g., City of Fairfax, v. Reno*, C.A. No. 97-2212 (D.D.C. October 21, 1997); *Roanoke County, VA v. Reno*, C.A. No. 00-1949 (D.D.C. January 24, 2001); *City of Winchester, VA v. Ashcroft*, C.A. No. 00-3073 (D.D.C. May 31, 2001); *City of Harrisonburg v. Ashcroft*, C.A. No. 1:02CV00289 (D.D.C. April 17, 2002). *Greene County v. Ashcroft*, C.A. No. 03-1877 (D.D.C.  Jan. 19, 2004); and *Augusta County, VA v. Gonzales*, C.A. No. 05-1885 (D.D.C. 2005).  As in those actions, this motion is based on the Stipulation of Facts which is being filed simultaneously herewith.

WHEREFORE, Plaintiff and Defendants respectfully pray that this joint motion be granted.

Respectfully submitted,

**For the Plaintiff MIDDLESEX COUNTY:**

<u>**/s/ J. Gerald Hebert**</u>
J. GERALD HEBERT
Attorney at Law
5019 Waple Lane
Alexandria, Va. 22304
(703) 628-4673
DC Bar No. 447676

**For the Defendants MUKASEY and BECKER:**

MICHAEL B. MUKASEY
Attorney General

GRACE CHUNG BECKER
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

<u>**/s/ Christy McCormick**</u>
JOHN TANNER
GAYE L. TENOSO
CHRISTY McCORMICK
Attorneys, Voting Section
Civil Rights Division
United States Department of Justice
Room 7254 - NWB
950 Pennsylvania Ave., N.W.
Washington, DC 20530
(202) 514-2386

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MIDDLESEX COUNTY, VIRGINIA, | ) | |
| a political subdivision of the | ) | |
| Commonwealth of Virginia, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL B. MUKASEY, | ) | |
| Attorney General of the | ) | C.A. No. 07-cv-01485 (TFH) |
| United States of America, | ) | |
| GRACE CHUNG BECKER, | ) | (Three-judge court) |
| Acting Assistant Attorney General, | ) | |
| Civil Rights Division, United States | ) | |
| Department of Justice, Washington, DC, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

STIPULATION OF FACTS

This action was initiated by Middlesex County, a political subdivision of the

Commonwealth of Virginia (hereafter "the County").  The County seeks a declaratory

judgment pursuant to Section 4(a) of the Voting Rights Act of 1965, as amended, 42

U.S.C. §1973b.

The parties[1] have jointly moved this three-judge Court for entry of a Consent

Judgment and Decree to resolve this action.  In support of that motion, the parties have

entered into the following stipulation of facts.  The facts in this stipulation may be

received into evidence in lieu of further proof or testimony.

It is hereby stipulated, by and between the respective parties, that:

---

[1] Defendants Mukasey and Becker are successors in office and thus automatically substituted as parties for
original defendants Gonzales and Kim.  See Rule 25(d), Federal Rules of Civil Procedure.

1.  Plaintiff Middlesex County ("the County") is a political subdivision of the Commonwealth of Virginia and a political subdivision of a state within the meaning of Section 4(a) of the Voting Rights Act, 42 U.S.C. §1973b(a)(1).  Middlesex County is located at the eastern end of Virginia's Middle Peninsula. The County is bounded by the Rappahannock River to the north, by the Chesapeake Bay to the east, by the Piankatank River and Dragon Run Swamp to the southwest, and by Essex County to the northwest. The County has a land area of 130 square miles and 135 linear miles of shoreline.

2.  Located within Middlesex County is the Town of Urbanna ("the Town"). Residents of the Town are eligible to participate in town elections and in county elections.

3.  In addition to the County itself, there are elected governmental units that exist completely in Middlesex County within the meaning of 42 U.S.C. §1973b(a)(1).  One of these is the town government of Urbanna, which is governed by a Town Administrator, Mayor and 6-member town council. Another governmental unit operating completely within Middlesex County is the five-member Middlesex County School Board, which are elected in odd years to four-year staggered terms from the same districts as members of the County Board of Supervisors.

4.  Middlesex County is a covered jurisdiction subject to the special provisions of the Voting Rights Act, including Section 5 of the Act.  42 U.S.C. §1973c.  Under Section 5, the County is required to obtain preclearance from either this Court or from the Attorney General for any change in voting standards, practices and procedures since the Act's November 1, 1964 coverage date for Virginia.

5.  Middlesex County was designated as a jurisdiction subject to the special provisions of the Voting Rights Act on the basis of the determinations made by the Attorney General that Virginia maintained a "test or device" as defined by Section 4(b) of the Act on November 1, 1964, and by the Director of the Census that fewer than 50 percent of the persons of voting age then residing in the state voted in the 1964 presidential election.  42 U.S.C. §1973b(b).  The "test or device" triggering preclearance coverage under Section 5 was an article of the Virginia Constitution providing for a literacy test as a prerequisite for citizens to become electors.  Va. Const. Art. II, Sec. 20 (1902).  The literacy test was repealed by the Virginia Constitution of 1972.

6.  The Middlesex County Board of Supervisors is the governing body that formulates policies for the administration of government in Middlesex County.  It is comprised of five members elected from single-member districts to serve four-year staggered terms. The County Board of Supervisors appoints a County Administrator to serve as the County's chief administrative officer. The general day to day operations of Middlesex County are controlled by the Office of the County Administrator.

7.  According to the 2000 census, Middlesex County, Virginia has a total population of 9,932.  Of this number, 1,999 persons (or 20.1%) are black and 55 (or .6%) are Hispanic.  The voting age population of the County, according to the 2000 census, is 8,023.  Of this number, 1,563 (19.5%) are black. The Town of Urbanna, according to the 2000 census, has a total population of 543.  Of this number, 19 (3.5%) are black and 3 (.6%) are Hispanic.

8.  Like other jurisdictions in the Commonwealth of Virginia, the County does not collect or maintain voter registration data by race.  Current data show, however, that a

significant proportion of the County's voting age population is registered to vote. As of November 2006, there were 7,348 registered voters in Middlesex County.

9. The number of registered voters in the County has steadily risen over the last few years. In 1998, for example, there were 5,989 registered voters in the County. By 2003, the number of registered voters had grown to 6,601. The number of registered voters in the County has continued to grow. As of 2006, there were 7,348. Thus, from 1998 to 2006, the total number of registered voters in the County has grown by 23% (from 5,989 in 1998 to 7,348 in 2006).

10. Voter turnout in elections within Middlesex County (*i.e.*, the percentage of those registered voters who cast ballots) varies according to the offices up for election. In the last two Presidential elections (2000 and 2004), for example, 75.8% and 76.9% of the County's registered voters turned out to vote, respectively. In the General Elections for state and county offices held in November 1999, 2001, 2003, and 2005, 62.7%, 58.6%, 51.2%, and 54.1% of the County's registered voters turned out to vote, respectively.

11. There are presently a total of seven polling locations located conveniently to voters across the County. All polling places in the County are accessible to voters with physical disabilities.

12. Black candidates have had a long history of electoral success in Middlesex County. Mr. Frank Jessie, now deceased, was first elected to the Board of Supervisors in 1979, and won re-election as recently as 1999. A black candidate beat a white candidate in the county-wide election for Sheriff in 1997. A black candidate ran unopposed in the county-wide election for Commissioner of Revenue in November 2007.

The current Vice Chairman of the Middlesex County Board of Supervisors is black, having been re-elected in 2003. In 1999, 2001, and 2003, black candidates for the County Board and School Board each won. In the 2003 School Board race, a black candidate defeated a white candidate.

13.  Since 1996, Middlesex County has made 15 preclearance submissions to the United States Department of Justice pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. §1973c.  Of these 15 submissions, all were made by the County.  None was objected to by the Department. Two submissions were withdrawn.

14.  Within the ten years preceding the filing of this action, Middlesex County has not enforced any voting changes prior to Section 5 preclearance.  Nor has the Attorney General interposed a Section 5 objection to any change affecting voting in Middlesex County within the past ten years.  The County has not sought judicial preclearance of any voting changes in this Court.

15.  Voter registration opportunities in the County are readily and equally available to all citizens.  The voter registration office for the County is located in the Woodward Building with other county offices in Saluda, a location that is convenient for all County residents.  The voter registration office is open from 8:30 a.m. to 4:30 p.m. daily.

16.  Voters in Middlesex County may also register by mail, and voter registration applications are available at locations convenient to voters in the County.  The opportunity to become a registered voter in Middlesex County is also available under the National Voter Registration Act (the "NVRA") at the Department of Motor Vehicle ("DMV") offices and at public assistance agencies in Middlesex County.  The Middlesex

County General Registrar makes voter registration applications available at the County social services office, County health department, all of the libraries in the County, and all of the post offices in the County. The registrar typically does a presentation about voting and registers high school seniors at the public high school in the spring. While in past years most voters became registered at the County's voter registration office, the implementation of the NVRA in Virginia over the last decade has changed the origin of many registration applications. Today, many of the County's new registrants register through applications submitted through the DMV and by mail, and the opportunities for persons to register to vote in Middlesex County has been made more convenient and available as a result of implementation of the NVRA.

17. Middlesex County has a three-member Electoral Board, appointed pursuant to Virginia state law. The Electoral Board is comprised of one black member and two white members. No person recommended to serve as a poll official has been rejected by the Electoral Board for at least the preceding ten years. The Electoral Board Secretary, Dr. Chauncey E. Mann, Jr., is black, and has served on the Board since 1990.

18. In the last five county-wide elections (General, Primary and Special 2006, General and Primary 2005) Middlesex County has employed 201 poll workers, of whom 33 (or 16.4%) are black. The percentage of black poll workers is slightly below the percentage of Middlesex County's black voting age population. Black interns have participated in the General Registrar's summer internship program.

19. No person in Middlesex County has been denied the right to vote on account of race, color, or membership in a language group for at least the preceding ten years.

20.  No "test or device" as defined in the Voting Rights Act (42 U.S.C. §1973b(c)) has been used in Middlesex County as a prerequisite to either registering or voting for at least the preceding ten years.

21.  No final judgment of any court of the United States has determined that denials or abridgments of the right to vote on account of race or color have occurred in Middlesex County, nor has the County entered into any consent decree, settlement or agreement resulting in any abandonment of a voting practice challenged on such grounds. There are no pending actions against Middlesex County alleging such denials or abridgments of the right to vote.

22.  No voting practices or procedures have been abandoned by the County or challenged on the grounds that such practices or procedures would have either the purpose or the effect of denying the right to vote on account of race or color.

23.  Middlesex County has not employed any voting procedures or methods of election that inhibit or dilute equal access to the electoral process by minority voters in the County.  Minority voters in Middlesex County are not being denied an equal opportunity to elect candidates of their choice to the County Board of Supervisors, to the County School Board, or to the Urbanna Town Council.

24.  Federal examiners have never been appointed or assigned to Middlesex County under Section 3 of the Voting Rights Act, 42 U.S.C. §1973a.

25.  Because there has not been any known intimidation or harassment of persons exercising rights protected under the Voting Rights Act in Middlesex County within the last ten years, neither the County nor any of its governmental units have had any occasion to eliminate such activity.

26.  Pursuant to 42 U.S.C. §1973b, the County has "publicize[d] the intended commencement …of [this] action in the media serving [the County] and in the appropriate United States post offices."  A Notice of Intent to Seek a Bailout was published by the County in the *Southside Sentinel*, the County's weekly newspaper on March 22, March 29, and April 5, 2007.  This Notice was also posted at all post offices in the County, at the County courthouse in Saluda, at the County social services office, and at the office of the General Registrar of Voters.  The aforementioned Notice also advertised that a public hearing would be held regarding the bailout on April 17, 2007, at 7:30 p.m.  At the April 17, 2007 public hearing, not a single member of the public appeared and thus no one spoke in opposition to the bailout or raised any questions about the County's proposed bailout.  In addition, the County has also the proposed <u>settlement</u> of this bailout action in the media serving Middlesex County and in the appropriate United States post offices as set forth in 42 U.S.C. §1973b(a).  A Notice that the Department of Justice had agreed to the Bailout also was published by the County in the Southside Sentinel, a weekly newspaper covering Middlesex County, on August 23, 2007,  August 30, 2007, and September 6, 2007.  The Notice of the Proposed Settlement of Bailout Lawsuit was also posted at all local post offices, the courthouse, town offices, and the County voting registration office.

27.  The United States has determined that it is appropriate to consent to a declaratory judgment in this action, pursuant to Section 4(a)(9) of the Voting Rights Act. This consent is premised upon an understanding that Congress intended Section 4(a)(9) to permit bailout in those cases where the Attorney General is satisfied that the statutory

objectives of encouraging Section 5 compliance, and preventing the use of racially discriminatory voting practices, would not be compromised by such consent.

28.  The United States' consent in this action is based upon its own factual investigation and consideration of all of the circumstances in this case, including the views of minority citizens in the County, the fact that there are no defendant-intervenors, the affirmative steps taken by the County to increase voter participation, and the absence of evidence of racial polarization or discrimination in the electoral process within the County.

Approved as to form and content:

**For the Plaintiff MIDDLESEX COUNTY:**

**/s/ J. Gerald Hebert**
J. GERALD HEBERT
Attorney at Law
5019 Waple Lane
Alexandria, Va. 22304
(703) 628-4673
DC Bar No. 447676

**For the Defendants MUKASEY and BECKER:**

MICHAEL B. MUKASEY
Attorney General

GRACE CHUNG BECKER
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

**/s/ Christy McCormick**
JOHN TANNER
GAYE L. TENOSO
CHRISTY McCORMICK
Attorneys, Voting Section
Civil Rights Division
United States Department of Justice
Room 7254 - NWB
950 Pennsylvania Ave., N.W.
Washington, DC 20530
(202) 514-2386

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MIDDLESEX COUNTY, VIRGINIA, | ) | |
| a political subdivision of the | ) | |
| Commonwealth of Virginia, | ) | |
| | ) | |
|      Plaintiff, | ) | |
| | ) | |
|      v. | ) | |
| | ) | |
| MICHAEL B. MUKASEY, | ) | |
| Attorney General of the | ) | C.A. No. 07-cv-01485 (TFH) |
| United States of America, | ) | |
| GRACE CHUNG BECKER, | ) | (Three-judge court) |
| Acting Assistant Attorney General, | ) | |
| Civil Rights Division, United States | ) | |
| Department of Justice, Washington, DC, | ) | |
| | ) | |
|      Defendants. | ) | |
| _____ | ) | |

CONSENT JUDGMENT AND DECREE

This action was initiated by Middlesex County, Virginia, a political subdivision of

the Commonwealth of Virginia (hereafter "the County"). The County is subject to the

provisions of Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. §1973c.

The County seeks a declaratory judgment under Section 4 of the Voting Rights Act of

1965, as amended, 42 U.S.C. §1973b. A three-judge court has been convened as provided

in 42 U.S.C. §1973b(a)(5) and 28 U.S.C. §2284.

Section 4(a) of the Voting Rights Act provides that a state or political subdivision

subject to the special provisions of the Act may be exempted from those provisions if it

can demonstrate in an action for a declaratory judgment before the United States

District Court for the District of Columbia that for the ten-year period prior to filing the

action and during its pendency, it has both 1) complied with the Voting Rights Act, and

2) taken positive steps both to encourage minority political participation and to remove

structural barriers to minority electoral influence.  In order to demonstrate compliance

with the Voting Rights Act during the ten-year period prior to commencement of a

declaratory judgment action under Section 4(a), the County must satisfy five conditions:

> 1) the County has not used any test or device during that
> ten-year period for the purpose or with the effect of denying or
> abridging the right to vote on account of race or color;
> 2) no court of the United States has issued a final judgment
> during that ten-year period that the right to vote has been
> denied or abridged on account of race or color within the
> territory of the County, and no consent decree, settlement or
> agreement may have been entered into during that ten-year period
> that resulted in the abandonment of a voting practice challenged
> on such grounds; and no such claims may be pending at the time
> the declaratory judgment action is commenced;
> 3) no Federal examiners have been assigned to the County
> pursuant to the Voting Rights Act during the ten-year period
> preceding commencement of the declaratory judgment action;
> 4) the County and all governmental units within its
> territory must have complied with Section 5 of the Voting Rights
> Act, 42 U.S.C.§1973c, during that ten-year period, including the
> requirement that voting changes covered under Section 5 not be
> enforced without Section 5 preclearance, and that all voting
> changes denied Section 5 preclearance by the Attorney General or
> the District Court for the District of Columbia have been
> repealed; and
> 5) neither the Attorney General nor the District Court for
> the District of Columbia have denied Section 5 preclearance to a
> submission by the County or any governmental unit within its
> territory during that ten-year period, nor may any Section 5
> submissions or declaratory judgment actions be pending. 42
> U.S.C. §1973b(a)(1)(A-E).

In addition, to obtain the declaratory judgment, the County and all governmental

units within its territory must have: 1) eliminated voting procedures and methods of

election that inhibit or dilute equal access to the electoral process, 42 U.S.C.

§1973b(a)(1)(F)(i); and 2) engaged in constructive efforts to eliminate intimidation

or harassment of persons exercising voting rights, and to expand the opportunity for convenient registration and voting for every person of voting age, and the appointment of minority persons as election officials throughout the jurisdiction and at all stages of the election and registration process,42 U.S.C. §1973b(a)(1)(F)(ii-iii).  The County is required to present evidence of minority participation in the electoral process, including the levels of minority group registration and voting, changes in such levels over time, and disparities between minority group and non-minority group participation. 42 U.S.C. §1973b(a)(2).  In the ten years preceding bailout, the County must not have engaged in violations of any provision of the Constitution or laws of the United States or any State or political subdivision with respect to discrimination in voting on account of race or color. 42 U.S.C. §1973b(a)(3).  Finally, the County must provide public notice of its intent to seek a Section 4(a) declaratory judgment. 42 U.S.C. §1973b(a)(4).

The Defendants Attorney General and Assistant Attorney General, after investigation, have agreed that the Plaintiff has fulfilled all conditions required by Section 4(a) and is entitled to the requested declaratory judgment.  The parties have filed a joint motion, accompanied by a Stipulation of Facts, in support of entry of this Consent Judgment and Decree.

<u>FINDINGS</u>

Pursuant to the parties' stipulations and joint motion, this Court finds as follows:

1. The County is a political subdivision of the Commonwealth of Virginia, and a political subdivision of a state within the meaning of Section 4(a) of the Voting Rights Act, 42 U.S.C. §1973b(a)(1).

3

2.    The Middlesex County Board of Supervisors is the governing body that formulates policies for the administration of government in Middlesex County. It is comprised of five members elected from single-member districts to serve four-year staggered terms. The County Board of Supervisors appoints a County Administrator to serve as the County's chief administrative officer. The general day to day operations of Middlesex County are controlled by the Office of the County Administrator. In addition to the County itself, there are elected governmental units that exist completely in Middlesex County within the meaning of 42 U.S.C. §1973b(a)(1).  One of these is the town government of Urbanna, which is governed by a Town Administrator, Mayor and six-member town council. Another governmental unit operating completely within Middlesex County is the five-member Middlesex County School Board, which are elected in odd years to four-year staggered terms from the same districts as members of the County Board of Supervisors. The County is a covered jurisdiction subject to the special provisions of the Voting Rights Act, including Section 5 of the Act, 42 U.S.C. § 1973c.

3.    The County was designated as a jurisdiction subject to the special provisions of the Voting Rights Act on the basis of the determinations made by the Attorney General that Virginia maintained a "test or device" as defined by section 4(b) of the Act, 42 U.S.C. § 1973b(b), on November 1, 1964, and by the Director of the Census that fewer than 50 percent of the persons of voting age residing in the state voted in the 1964 presidential election.

4.      No discriminatory test or device has been used by the County during the ten years prior to the commencement of this action for the purpose or with the effect of denying or abridging the right to vote on account of race or color.

5.      No person in the County has been denied the right to vote on account of race or color during the past ten years.

6.      No court of the United States has issued a final judgment during the last ten years prior to the commencement of this action that the right to vote has been denied or abridged on account of race or color in Middlesex County, and no consent decree, settlement, or agreement has been entered into resulting in any abandonment of a voting practice challenged on such grounds during that time. No such claims presently are pending or were pending at the time this action was filed.

7.      No Federal Examiners or Observers have been assigned to the County within the ten-year period preceding this action.

8.      The County has not enforced any voting changes prior to receiving Section 5 preclearance during the ten-year period preceding this action.

9.      All voting changes submitted by the County under Section 5 of the Voting Rights Act, 42 U.S.C. §1973c, have been precleared by the Attorney General. No Section 5 submissions by the County are pending before the Attorney General.  The County has never sought Section 5 judicial preclearance from this Court.

10.     No voting practices or procedures have been abandoned by the County or challenged on the grounds that such practices or procedures would have either

the purpose or the effect of denying the right to vote on account of race or color during the ten-year period preceding this action.

11.  The County does not employ voting procedures or methods of election which inhibit or dilute equal access to the electoral process by the County's minority citizens.

12.  There is no indication that in the past ten years any persons in Middlesex County have been subject to intimidation or harassment in the course of exercising their right to participate in the political process. The County has engaged in constructive efforts over the years to enhance registration and voting opportunities for all of its citizens of voting age in a variety of ways. Voter registration opportunities in the County are readily and equally available to all citizens.  The voter registration office for the County is located in the Woodward Building with other county offices in Saluda, a location that is convenient for all County residents.  The voter registration office is open from 8:30 a.m. to 4:30 p.m. daily. Voters in Middlesex County may also register by mail, and voter registration applications are available at locations convenient to voters in the County.  The opportunity to become a registered voter in Middlesex County is also available under the National Voter Registration Act (the "NVRA") at the Department of Motor Vehicle ("DMV") offices and at public assistance agencies in Middlesex County.  The Middlesex County General Registrar makes voter registration applications available at the County social services office, County health department, all of the libraries in the County, and all of the post offices in the County. The registrar typically does a

presentation about voting and registers high school seniors at the public high school in the spring. While in past years most voters became registered at the County's voter registration office, the implementation of the NVRA in Virginia over the last decade has changed the origin of many registration applications. Today, many of the County's new registrants register through applications submitted through the DMV and by mail, and the opportunities for persons to register to vote in Middlesex County has been made more convenient and available as a result of implementation of the NVRA.

13.     Since the County does not record the race of its registered voters, it is unable to present evidence directly measuring minority voter participation, but the County has provided evidence of voter participation for elections since 1997. Current data show, for example, that a significant proportion of the County's voting age population is registered to vote. The voting age population of the County, according to the 2000 census, is 8,023. As of November 2006, there were 7,348 registered voters in Middlesex County (91.6% of the voting age population). The number of registered voters in the County has steadily risen over the last few years. In 1998, for example, there were 5,989 registered voters in the County. By 2003, the number of registered voters had grown to 6,601. The number of registered voters in the County has continued to grow. As of 2006, there were 7,348. Thus, from 1998 to 2006, the total number of registered voters in the County has grown by 23% (from 5,989 in 1998 to 7,348 in 2006). Voter turnout in elections within Middlesex County (*i.e.*, the percentage of those registered voters who cast ballots) varies according to the

offices up for election.  In the last two Presidential elections (2000 and 2004), for example, 75.8% and 76.9% of the County's registered voters turned out to vote, respectively.  In the General Elections for state and county offices held in November 1999, 2001, 2003, and 2005, 62.7%, 58.6%, 51.2%, and 54.1% of the County's registered voters turned out to vote, respectively.

14.     The County has not engaged, within the ten years prior to the commencement of this action, in any violations of the Constitution or laws of the United States or any State or political subdivision with respect to discrimination in voting on account of race or color.

15.     The County has publicized the intended commencement and proposed settlement of this action in the media and in appropriate United States post offices as required under 42 U.S.C. §1973b(a)(4).  No aggrieved party has sought to intervene in this action pursuant to 42 U.S.C. §1973b(a)(4).

Accordingly, it is hereby ORDERED, ADJUDGED and DECREED:

1.      The Plaintiff, Middlesex County, Virginia is entitled to a declaratory judgment in accordance with Section 4(a)(1) of the Voting Rights Act, 42 U.S.C. §1973b(a)(1);

2.      The parties' Joint Motion for Entry of Consent Judgment and Decree is GRANTED, and Middlesex County, including the Middlesex County School Board and the Town of Urbanna, shall be exempt from coverage pursuant to Section 4(b) of the Voting Rights Act, 42 U.S.C. §1973b(b), provided that this Court shall retain jurisdiction over this matter for a period of ten years.  This

action shall be closed and placed on this Court's inactive docket,

subject to being reactivated upon application by either the Attorney

General or any aggrieved person in accordance with the procedures

set forth in 42 U.S.C. §1973b(a)(5).

3.    The parties shall bear their own costs.

Entered this _____ day of _____, 2007.


_____
UNITED STATES CIRCUIT JUDGE

_____
UNITED STATES DISTRICT JUDGE

_____
UNITED STATES DISTRICT JUDGE

Approved as to form and content:

**For the Plaintiff MIDDLESEX COUNTY:**


**/s/ J. Gerald Hebert**
J. GERALD HEBERT
Attorney at Law
5019 Waple Lane
Alexandria, Va. 22304
(703) 628-4673 (O)
DC Bar No. 447676

**For the Defendants MUKASEY and BECKER:**

MICHAEL B. MUKASEY
Attorney General
GRACE CHUNG BECKER
Acting Assistant Attorney General
JEFFREY A. TAYLOR
United States Attorney


**/s/ Christy McCormick**
JOHN TANNER
GAYE L. TENOSO
CHRISTY McCORMICK
Attorneys, Voting Section
Civil Rights Division
United States Department of Justice
Room 7254 – NWB
950 Pennsylvania Ave., N.W.
Washington, DC 20530
(202) 514-2386